IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Aric Balistreri, | ) | No. CV-09-8058-PCT-DGC (LOA) |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Charles L. Ryan, et al. | ) | |
| Respondents. | ) | |

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus. (docket # 1)   Respondents have filed an Answer, docket # 10, to which Petitioner has replied, docket # 14.  For the reasons discussed below, the undersigned recommends that the Petition be denied.

**I. Factual and Procedural Background**

**A.  Charges, Trial, and Sentencing**

On June 15, 2000, a Yavapai County grand jury returned an indictment charging Petitioner with three counts of dangerous drugs for sale, in violation of A.R.S. § 13-3407(A)(7); one count of possession of marijuana having a weight of more than 2, but less than 4, pounds, a class 3 felony in violation of A.R.S. § 13-3405(A)(1); one count of production of marijuana having a weight less than 2 pounds, a class 4 felony, in violation of A.R.S. § 13-3405(A)(3); one count of possession of drug paraphernalia, a class 6 felony, in violation of A.R.S. § 13-3415; and three counts of misconduct involving weapons, class 4 felonies, in violation of A.R.S. § 13-3102(A)(4).  (Respondents' Exh. B)   The indictment alleged that the offenses occurred on June 8, 2000.  (Respondents' Exh. B)

On December 12, 2000, Petitioner's counsel, David Wilson, filed a motion to suppress the fruits of the search warrant executed at Petitioner's residence on June 8, 2000. (Respondents' Exh. A) Counsel argued that information provided in the search warrant affidavit "was conflicting, deceptive, misleading and confusing and still did not contain any information to provide the Magistrate with a substantial basis for concluding that probable cause existed that there was illegal activity occurring at [Petitioner's] house on Butterfield Road." (Respondents' Exh. A at 5) The search warrant affidavit included allegations that non-resident Larz Youngren was conducting illegal drug-related activity at Petitioner's residence. (Respondents' Exh. A) The State filed a response in opposition to the motion to suppress. (Respondents' Exh. C) Petitioner filed a reply. (Respondents' Exh. D) Petitioner subsequently filed a supplement to the motion to suppress, arguing that the search warrant was defective because it was issued by *Pro Tempore* Judge Marc Hammond, a private attorney, who had represented Larz Youngren in an unspecified drug case "a few years earlier." (Respondents' Exh. E) In support of the supplement to the motion to suppress, Petitioner submitted an affidavit of *pro tem* Judge Hammond, avowing that he had signed the search warrant despite his misgivings and continuing friendship with Youngren's mother, because all of the other Yavapai County judges were away at a judicial conference. (Respondents' Exh. E) Petitioner argued that, pursuant to Rule 81 of the Arizona Supreme Court Code of Judicial Conduct, Cannon 3(E), Hammond should have disqualified himself because of his prior representation of Youngren. (Respondents' Exh. E)

On March 20, 2001, the trial court[1] conducted an evidentiary hearing on Petitioner's motion to suppress and the supplement thereto. During the evidentiary hearing, Petitioner introduced videotape footage of his residence, the affidavit of co-defendant Dean Tucker, and the testimony of five witnesses - Larz Youngren; Adult Probation Officer Jack Berry; Beth Diehl, Petitioner's fiancé; Danny Ripley, a fellow prisoner at the Yavapai County Jail

---

[1] The Honorable William T. Kiger presided.

and an associate of Youngren; and Officer Manera of the Arizona Department of Public Safety, who authored the affidavit underlying the search warrant. (Respondents' Exh. F; G)

At the close of evidence, the court rejected Petitioner's argument that the search warrant was invalid because *pro tem* Judge Hammond had signed the search warrant. (Respondents' Exh. G at 52-55) The court found that Judge Hammond's prior representation of Youngren and his relationship with Youngren's mother did not invalidate the search warrant. (Respondents' Exh. G at 52-55) Because neither party had submitted the affidavit underlying the search warrant at issue, the trial court deferred its ruling until it had the opportunity to review the affidavit. (Respondents' Exh. G at 55-61)

After receiving and reviewing the search warrant affidavit, on March 26, 2001, the court denied Petitioner's motion to suppress. (Respondents' Exh. H) The court rejected Petitioner's assertion that the "affidavit failed to contain sufficient information for the judge to find probable cause to issue the search warrant for the residence of [Petitioner]," and that "within the affidavit there is misleading information that induced the judge to issue the warrant as to [Petitioner]." (Respondents' Exh. H at 2) The court further found that the "good faith" exception articulated in *United States v. Leon*, 486 U.S. 897 (1984), would apply "even if the court could conclude that there was insufficient information to justify the issuance of the first [search] warrant." (Respondents' Exh. H at 4)

Three days after the court issued its ruling, on March 29, 2001, Petitioner filed a second motion to suppress reiterating the arguments he had made regarding lack of probable cause and *pro tem* Judge Hammond's disqualification to issue the search warrant. (Respondents' Exh. I) On September 24, 2001, the trial court denied the motion stating that:

> On March 26, 2001, the court ruled on the issue of suppression of items seized from the search. On March 29, 2001, the defendant filed a motion to suppress the search based upon 1) a lack of probable cause, and 2) the fact that the magistrate signing the warrant should have recused himself because of past representation of the defendant [Youngren]. The court has considered the pleading filed and the rest of the information in the court's file and previous hearings. Based upon the above, the motion is denied.

(Respondents' Exh. M)

Petitioner also filed several motions *in limine* challenging the accuracy of several factual assertions made by Officer Manera in the search warrant's affidavit. (Respondents' Exhs. J, K, L, N, O) On October 18, 2001, Petitioner filed a supplemental to the motion *in limine* seeking to suppress evidence on the ground that officer Manera had made several false statements in the affidavit he drafted in support of the search warrant. Movant argued that Manera's statements were false because they conflicted with statements that defense counsel had elicited during pretrial interviews of Sergeants Kelly Kasun and Pete Hodap, both of whom participated in the investigation culminating in the issuance of the search warrant for Petitioner's residence. (Respondents' Exhs. N, O)

On November 1, 2001, the trial court conducted a hearing to resolve the outstanding motions *in limine* which involved the suppression of evidence seized during the search of Petitioner's residence. (Respondents' Exh. P at 2) At the outset, Petitioner's counsel informed the court that he "was under the impression" that the court planned to hold an evidentiary hearing, and therefore, Sergeants Hodap and Kasun were present to testify regarding their statements contained in the documents attached to the previously filed pleadings. (Respondents' Exh. P at 2) The court stated that it had not planned to conduct an evidentiary hearing on the motions *in limine* because it had already conducted an evidentiary hearing on the issue of suppression of evidence in March 2001. The court stated that it had read the documents that Petitioner had submitted in support of his motions *in limine* which made an evidentiary hearing unnecessary. (Respondents' Exh. P at 3) The court inquired as to "what more would be necessary to rule on the [outstanding] motions [to suppress]?" (Respondents' Exh. P at 3) Defense counsel replied that he had attached to his motions the "relevant" pretrial interview transcripts of Sergeants Kasun and Hodap, and that "it would just be a matter for [him] to have the Evidentiary Hearing - to have [their pretrial statements] on the record, as opposed to [the pretrial statements being] simply attached to the motion for the record on appeal, to say this is what these people, particularly Sergeant Hodap and Kelly Kasun would testify to as to their knowledge concerning the events in question for the affidavit that was completed." (Respondents' Exh. P at 3-4)

After verifying that the record included all the materials that Petitioner had submitted, including the May 18, 2001 motion *in limine* and the October 18, 2001 supplement and exhibits, the court asked counsel whether "there is any necessity - and I'm asking both sides at this point -is there any necessity that either side can see that we would need testimony to supplement that record?"  (Respondents' Exh. P at 4-7)  Defense counsel responded, "[t]he only thing in particular, Your Honor, and only in doing this, again, for the record on Appeal, is that I did subpoena Mark Hammond, who was the magistrate in this case, to talk about his prior representation of Larz [Youngren] and how he didn't want to sign that affidavit and that sort of thing."  (Respondents' Exh. P at 7)  The State argued that Hammond's testimony was unnecessary and irrelevant because, even if Petitioner proved that Hammond violated the Code of Judicial conduct by signing the search warrant, such conduct did not constitute a valid basis for suppression.  (Respondents' Exh. P at 7-8)  Defense counsel agreed that the testimony he wished to elicit from Hammond either concerned judicial misconduct or duplicated information that he had already submitted in prior pleadings.  (Respondents' Exh. P at 9-10)  Defense counsel acknowledged that his purpose in calling Hammond to testify was to "establish a record for Appeal, because [he didn't] know what the Court of Appeals may decide to hang their hat on. . . ."  (Respondents' Exh. P at 9-10)   After considering counsel's arguments, the court stated that:

> Considering all of that, Mr. Wilson, I don't think I need any testimony from Mr. Hammond.  I think that the circumstances and everything have been pled.  I understand the position both sides are taking, and I think that all of this packet, taken together, is sufficient to make a decision based upon what you're asking for in your motion.  So, I don't see any need for additional evidentiary testimony on that motion at this time.

(Respondents' Exh. P at 10)   The court again verified that it had everything that defense counsel had submitted for consideration, and stated that it would issue a ruling within several days.  (Respondents' Exh. P at 10-11; Exh. Q)

The next day, the court issued a minute entry denying Petitioner's motion *in limine* and the supplement thereto.  The court explained that:

> The court has received and read the pleadings filed on the defendant's motion *in limine* to suppress evidence.  Specifically, those pleadings are the motion,

the State's response, the reply from the defendant, the supplement to the motion with attachments filed by the defendant and the State's response to the supplement.

Considering all of the above, the court still finds that the decision previously reached regarding the suppression of the evidence seized pursuant to the search warrant is the correct decision. As previously stated:

'Applying the standards as presented by the Arizona Supreme Court to this case, the court finds that the defendant has not met his burden in challenging the issuance of the search warrant in this case. Based upon this failure, the defendant's motion to suppress the evidence seized from [Petitioner's] residence is denied. The court adds that even if the court could conclude that there was insufficient information to justify the issuance of the first warrant, good faith as it is presented in *Leon* exists and none of the four possible exceptions are present to justify the suppression of the evidence.'

The motion *in limine* is denied.

(Respondents' Exh. R) Petitioner's case proceeded to trial in December of 2001. On the second day of trial, Petitioner renewed his motion to suppress, and the court permitted Petitioner to present the testimony of Staci Gennick and Larz Youngren in support of that motion. (Respondents' Exh. S; docket # 1-2 at 106-11) After hearing the testimony of Gennick and Youngren, the court denied Petitioner's renewed motion to suppress stating that, even if it were to excise from the search warrant affidavit the statements Petitioner alleged were untrue, the affidavit would still include sufficient probable cause to authorize the search warrant at issue. (Respondents' Exh. S; docket # 1-1 at 109-10)

On December 27, 2001, the jury found Petitioner guilty of all eight counts as charged. (Respondents' Exh. T) After conducting an evidentiary hearing, on January 25, 2002, the court found that Petitioner had committed the offenses while on probation, and that he had five historical felony convictions. (Respondents' Exhs. U, V) On January 28, 2002, the court imposed eight concurrent, presumptive prison terms, ranging from 3.75 to 15.75 years, to be served consecutive to Petitioner's sentences for prior offenses. (Respondents' Exh. V)

**B. Direct Appeal**

On January 29, 2002, Petitioner filed a notice of appeal. (Respondents' Exh. W) In his opening brief, Petitioner raised the following issues:

1. Did the trial court err in denying [Petitioner's] motion to suppress by reason of: (a) invalidity of the search warrant due to the disqualification of the

Judge *pro tem*; (b) the lack of probable cause; and (c) the absence of "good faith"?

2. Did the trial court err in failing to present the question of historical felony convictions to the jury?

3. Must the sentencing provision of A.R.S. § 13-604.02 be alleged before trial and proven to a jury?

(Respondents' Exh. X)

On October 7, 2002, the State filed its answering brief, to which Petitioner replied. (Respondents' Exhs. Y, Z) On December 5, 2003, the Arizona Court of Appeals affirmed Petitioner's convictions, but remanded for re-sentencing. The court explained that Petitioner's sentences could not stand because the prosecution failed to file a pretrial allegation that Petitioner committed the instant offenses while on probation. (Respondents' Exh. AA at 1-13) The appellate court found that the "good faith" exception applied to Petitioner's Fourth Amendment claims. (Respondents' Exh. AA at 4) The court further found that (1) Petitioner's claim that the warrant was invalid because *pro tem* Judge Hammond had previously represented Larz Youngren lacked merit; and (2) the search warrant was not so lacking in probable cause that the police could not possibly have placed good-faith reliance upon the court's authorization of the search warrant. (Respondents' Exh. AA at 10-19)

On February 21, 2003, Petitioner filed a petition for review with the Arizona Supreme Court, presenting the following claims: (1) *pro tem* Judge Hammond was not neutral and detached because he had previously represented Larz Youngren; (2) the search warrant was not supported by sufficient probable cause; (3) the good-faith exception did not apply; and (4) the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2000) required a jury to find his prior felony convictions. (Respondents' Exh. BB at 2-7, 9-12) Petitioner also argued that "the trial court's failure to hold a hearing upon the issue of Judge *Pro Tem* Hammond's disqualification deprived [Petitioner] the opportunity to demonstrate law enforcement's knowledge of the personal and prior professional relationship between Judge Hammond and Larz Youngren at the time of the application for the search warrant and

the scope and the extent of such relationship. Such failure deprived [him] of constitutional due process." (Respondents' Exh. BB at 7) Petitioner further argued that the Arizona Court of Appeals relied upon "speculation" when it found no evidence in the record to show that the police should have known that Hammond either "abandoned his impartiality" or "was unable to act in a neutral and detached manner." (Respondents' Exh. BB at 7-9) On June 30, 2003, the Arizona Supreme Court denied review. (Respondents' Exh. CC at 2)

## C. Re-Sentencing

In accordance with the Arizona Court of Appeals' mandate, on January 2, 2004, the trial court conducted a re-sentencing hearing. (Respondents' Exh. DD) The court re-sentenced Petitioner to eight concurrent, mitigated prison terms, the longest of which was 14 years. The court ordered the sentences to run consecutively to the sentences Petitioner was currently serving for three other cases. (Respondents' Exh. DD)

On April 22, 2004, Petitioner filed an appeal challenging his new sentences. (Respondents' Exhs. EE, II) On November 2, 4004, the Arizona Court of Appeals rejected Petitioner's claims and affirmed his sentences. (Respondents' Exh. KK) Petitioner did not seek review in the Arizona Supreme Court. (Respondents' Exh. LL)

## D. First Post-Conviction Proceeding

On December 28, 2004, Petitioner, through counsel Kenneth Ray, filed a notice of post-conviction relief. (Respondents' Exh. MM) In his subsequently filed petition, Petitioner raised the following claims:

(1) Petitioner was denied due process and a fair consideration of all evidence bearing on the legality of the issuance of search warrants by Judge *pro tem* Hammond because the trial court refused to permit Judge Hammond to testify at the November 1, 2001 suppression hearing.

(2) Petitioner was denied due process as a result of prosecutorial vindictiveness and bad faith because he was not afforded a fair opportunity to consider and accept a plea bargain which the State offered.

(3) Petitioner was denied due process and effective assistance of trial counsel arising from the prosecutor's statement that the jury could determine guilt based upon a 'preponderance of the evidence,' which was not cured by objection by defense counsel, by the court, or by the State.

(Respondents' Exh. NN)

On October 31, 2005, the trial court denied relief explaining that:

The Court finds that the claim challenging the validity of the search warrant is precluded pursuant to [Arizona] Rule [of Criminal Procedure] 32.2(a)(2).

The Court finds that the claim of prosecutorial vindictiveness and bad faith in plea negotiations is precluded pursuant to [Arizona] Rule [of Criminal Procedure] 32.2(a)(3).

The Court finds that the claim for relief based on the prosecutor's use of the term preponderance of the evidence in opening statement is not an issue that would allow relief under Rule 32. The use of that phrase in the context the prosecutor chose to use it did not then, nor now, make sense. It was clearly not an urging by the prosecutor that some lower standard of proof could be used by the jury in determining guilt. At the time, the Court believed that the defense was not prejudiced; reviewing the transcript, the Court continues to hold that conclusion.

(Respondents' Exh. OO)

After the trial court denied post-conviction relief, on November 25, 2005, Petitioner wrote a letter to defense counsel, Mr. Ray, asking the following questions:

1. Why do you believe that *Franks v.Delaware* does not apply to my case? Please be specific.

2. At what phase of my appeal do you intend to address the fact that I was deprived of due process because the court refused to allow Officer Kasun to testify about the information he provided to the affiant of the search warrant?

3. When will you address the fact that the court refused to specify what information it was using to validate the warrant, even after my counsel asked the court to do so?

(docket # 1-1 at 113) On March 5, 2006, Mr. Ray responded in writing to Petitioner's letter. (docket # 1-1 at 115-116) In the meantime, on December 1, 2005, Mr. Ray filed a petition for review from the denial of post-conviction relief with the Arizona Court of Appeals. (Respondents' Exh. PP) Petitioner sought review of the trial court's denial of relief on the first two grounds raised in his petition for post-conviction relief. (Respondents' Exh. PP at 2) On October 6, 2006, the Arizona Court of Appeals summarily denied review. (Respondents' Exh. QQ)

After the Court of Appeals had denied the petition for review, on October 12, 2006, Petitioner attempted to file a *pro per* supplement to his petition for review. (Respondents'

Exh. RR)  On October 20, 2006, the Arizona Court of Appeals directed the clerk to return the original and all copies of Petitioner's *pro per* supplement because it had denied review on October 6, 2006.  The court advised Petitioner that if he sought "further review in this matter, [he] must file a petition for review by the Arizona Supreme Court."  (Respondents' Exh. SS)

On November 2, 2006, Petitioner filed a *pro per* petition for review with the Arizona Supreme Court, raising the following claims:

> 1.  Trial counsel, David Wilson, rendered ineffective assistance because he "failed to investigate, was ill-prepared at hearings, and was unaware of dispositive law."  (Respondents' Exh. TT at 2-4)

> 2. [Petitioner] was denied due process and a fair consideration of all evidence bearing upon the veracity of Officer Manera's sworn statements regarding [Petitioner] when the trial court failed to allow [Petitioner] to present evidence from Sgt. Hodap and Sgt. Kasun, thus ruling in an unreasonable determination against dispositive law, due to ineffective assistance of counsel.  (Respondents' Exh. TT at 4-11)

Thereafter, on November 8, 2006, Mr. Ray filed a motion with the Arizona Court of Appeals requesting: (1) an order remanding this case to the trial court so Petitioner could present, in the first instance, a challenge to the effectiveness of trial counsel in a supplemental petition for post-conviction relief; and (2) an extension of time in which Petitioner could seek review by the Arizona Supreme Court.  (Respondents' Exh. VV)  On November 15, 2006, the Arizona Court of Appeals denied both requests because the matter was pending before the Arizona Supreme Court.  (Respondents' Exh. UU)

On December 18, 2006, the Arizona Supreme Court ordered the State to respond to Petitioner's petition for review.  (Respondents' Exh. WW)  On January 16, 2007, the State responded.  (Respondents' Exh. XX)  On January 27, 2007, Petitioner submitted a reply.  (Respondents' Exh. YY)  On February 1, 2007, the Arizona Supreme Court rejected Petitioner's reply pursuant to Arizona Rule of Criminal Procedure 31.19(d), because such a reply was not permitted absent prior court order.  (Respondents' Exh. ZZ)  On April 18, 2007, the Arizona Supreme Court summarily denied review.  (Respondents' Exh. AAA)

**E.  Second Post-Conviction Proceeding**

- 10 -

On May 1, 2007, Petitioner filed a second notice of post-conviction relief. (Respondents' Exh. BBB)   On May 26, 2007, Petitioner filed a *pro per* petition for post-conviction relief raising the following claims:

> (1) Appellate and post-conviction counsel were ineffective in violation of the Sixth Amendment for failing to raise valid issues for review and for failing to investigate the ineffective assistance of trial counsel, after having been instructed to do so by Petitioner.
>
> (2) Trial counsel was ineffective for failing to investigate, for being unprepared for hearings, and for being unaware of dispositive law.
>
> (3) Petitioner was denied due process and fair consideration of all evidence bearing on the veracity of Officer Manera's sworn statements, when the trial court abused its discretion by stipulating to the contents of Sgt. Kasun and Sgt. Hodap's interviews.
>
> (4) The trial court provided the appellate court with false and manufactured evidence upon which the appellate court made its *de novo* review of the search warrant.

(Respondents' Exh. CCC)   In support of his first claim of ineffective assistance of "appellate" counsel, Petitioner argued that Mr. Ray was ineffective for failing to raise certain arguments during Petitioner's first Rule-32 proceeding.  (Respondents' Exh. CCC at 3; *see also* Respondents' Exh. NN; docket # 1-1 at 113)

On June 5, 2007, Petitioner supplemented his petition for post-conviction relief adding a claim that "[t]he trial court made an unreasonable ruling when it failed to allow for a jury instruction of facilitation, a lesser charge, to the State's accomplice theory presented at trial."  (Respondents' Exh. DDD)  On September 10, 2007, the trial court denied relief stating that:

> The Court has now had the opportunity to read and consider defendant's Petition for Post-Conviction Relief, the Supplement to that petition, the State's response and the defendant's reply.
>
> The Court finds that except for the issue of ineffective assistance of appellate counsel, the defendant's claims for relief are precluded pursuant to Rule 32.2(a).  As to the performance of appellate counsel, using the standard discussed in *State v. Febles*, the Court concludes that in this case there was not ineffective assistance of appellate counsel.

(Respondents' Exh. GGG)  On September 29, 2007, Petitioner sought review in the Arizona Court of Appeals raising the same claims he had presented in his Second Rule-32 petition

1 and supplement. (Respondents' Exh. HHH) On May 15, 2008, the Arizona Court of

2 Appeals summarily denied review. (Respondents' Exh. KKK)

3         On September 15, 2008, Petitioner sought review in the Arizona Supreme Court

4 which was summarily denied on January 13, 2009. (Respondents' Exhs. LLL, MMM)

5         **F. Federal Petition for Writ of Habeas Corpus**

6         On April 1, 2009, Petitioner filed a timely Petition for Writ of Habeas Corpus in this

7 Court, raising the following claims:

8                 **Ground One:** Petitioner's conviction was obtained by use of evidence gained
                pursuant to an unconstitutional search and seizure, and the State did not
9                provide a full and fair hearing on this issue.

10                **Ground Two: A.** Trial counsel was ineffective for failing to properly
                investigate the affidavit supporting the search warrant, and for failing to
11               petition for a "*Franks*" hearing after learning the search warrant affidavit
                contained false and misleading information. **B.** "Appellate" counsel was
12               ineffective for failing to raise the same issues on review.

13 (docket # 1 at 6-7, 29-45)[2]  Respondents assert that Petitioner's claims are unexhausted and

14 procedurally barred, or lack merit. (docket # 10)  Petitioner disputes Respondents' analysis

15 of his claims. The Court will address these arguments below.

16 **II. Exhaustion and Procedural Bar**

17         Respondents argue that because Petitioner did not properly exhaust Grounds 1 and

18 2A, those claims are procedurally defaulted and barred from federal habeas corpus review.

19 (docket # 10 at 21)  Petitioner disputes this assertion. (docket # 14)

20         **A. Relevant Legal Principles**

21         Pursuant to 28 U.S.C. § 2254(b)(1), before a federal court may consider a state

22 prisoner's application for a writ of habeas corpus, the prisoner must have exhausted

23 available state-court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  To

24 properly exhaust state remedies, the prisoner must have afforded the state courts the

25 opportunity to rule upon the merits of his federal constitutional claims by "fairly presenting"

26

27 ───────────────

28        [2] Respondents concede that the Petition is timely filed in accordance with 28 U.S.C. § 2244.
(docket # 10 at 20)

them to the state courts in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim.").

To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either on direct appeal or in a petition for post-conviction relief. *See Castillo v. McFadden,* 399 F.3d 993, 999 (9th Cir. 2004); *Crowell v. Knowles,* 483 F.Supp.2d 925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

To fairly present a claim, a habeas petitioner must cite in state court to the specific constitutional guarantee upon which he bases his claim in federal court. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (stating that "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); *Galvan v. Alaska Department of Corrections*, 397 F.3d 1198, 1205 (9th Cir. 2005) (stating that "[t]o exhaust a federal constitutional claim in state court, a petitioner has to have, at least, explicitly alerted the court that she was making a federal constitutional claim."). General appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, do not establish fair presentation of a federal constitutional claim. *Castillo*, 399 F.3d at 1002 (observing that "[e]xhaustion requires more than drive-by citation, detached from any articulation of an underlying federal legal theory."); *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th

Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Similarly, a mere reference to the "Constitution of the United States" does not preserve a claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts . . . ." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim to the state court if the court must read beyond the petition or brief filed in that court to discover the federal claim. *Baldwin*, 541 U.S. at 27. In summary, a "petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum; (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

Where a prisoner fails to "fairly present" a claim to the state courts in a procedurally appropriate manner, state court remedies may, nonetheless, be "exhausted." This type of exhaustion is often referred to as "procedural default" or "procedural bar." *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S. at 731-32. There are two categories of procedural default. First, a state court may have applied a procedural bar when the prisoner attempted to raise the claim in state court. *Nunnemaker*, 501 U.S. at 802-05. Second, the state prisoner may not have presented the claim to the state courts, but pursuant to the state courts' procedural rules, a return to state court would be "futile." *Teague v. Lane*, 489 U.S. 288, 297-99 (1989). Generally, any claim not previously presented to the Arizona courts is procedurally barred from federal review because any attempt to return to state court to properly exhaust a current habeas claim would be "futile." Ariz. R. Crim. P. 32.1, 32.2(a) & (b); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.1(a)(3) (relief is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding);

Ariz.R.Crim.P. 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time-barred. *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish cause, a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Id.* The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id.* To establish prejudice, a prisoner must demonstrate that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982). Where petitioner fails to establish cause, the court need not reach the prejudice prong.

To establish a "fundamental miscarriage of justice" resulting in the conviction of one who is actually innocent, a state prisoner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B).

**B. Application of Law to Petitioner's Claims**

**1. Ground 1**

In Ground 1, Petitioner argues he was denied due process and a full and fair hearing on his Fourth Amendment challenge to the search warrant because the trial court refused to allow the testimony of Sergeant Kasun and Sergeant Hodap. (docket # 1 at 6, 29) As Respondents assert, the record reflects that Petitioner did not properly exhaust state remedies with respect to this specific claim.

Before Petitioner's trial, the court conducted a hearing on November 1, 2001 regarding Petitioner's motions *in limine* seeking to suppress evidence obtained during the search of his residence. (Respondents' Exh. P) At that time, trial counsel intended to call Sergeants Kasun and Hodap to testify regarding the motions *in limine*. Counsel advised the court that he had submitted to the court copies of the relevant transcripts of the pretrial interviews of these witnesses. (Respondents' Exh. P at 3) He also advised the court that his purpose for having Sergeants Kasun and Hodap testify during an evidentiary hearing was to preserve their pretrial statements "on the record, as opposed to [the pretrial statements being] simply attached to the motion for the record on appeal, to say this is what these people, particularly Sergeant Hodap and Kelly Kasun would testify to as to their knowledge concerning the events in question for the affidavit that was completed." (Respondents' Exh. P at 3-4) After the court verified that it had all of the materials that Petitioner had submitted in support of his motions *in limine*, the court asked counsel, "[I]s there any necessity — and I'm asking both sides at this point - is there any necessity that either side can see that we would need testimony to supplement that record?" (Respondents' Exh. P at 6-7) Petitioner's counsel indicated that he had no objection to the court's decision to consider the motions *in limine* based on the submitted material, rather than receiving live testimony of the Sergeants Hodap and Kasun. (Respondents' Exh. P at 7-11)

On direct appeal, Petitioner did not present his current claim that the trial court denied him due process by resolving the motions *in limine* by relying on the interview transcripts of Sergeants Hodap and Kasun, rather than live testimony. (Respondents' Exh. X) Rather, Petitioner's Fourth Amendment argument on direct appeal focused on whether: (1) the search warrant was invalid because *Pro Tem* Judge Marc Hammond had previously represented Larz Youngren and, therefore, was neither neutral nor detached; (2) whether the search warrant affidavit contained facts sufficient to establish probable cause that contraband would be found at Petitioner's residence; and (3) whether the good-faith exception applied to the search warrant if probable cause were absent. (Respondents' Exh. X at 3, 5-13) The appellate court denied Petitioner's claims. (Respondents' Exh. Y)

On review to the Arizona Supreme Court of the denial of his direct appeal, Petitioner argued that "the trial court's failure to hold a hearing upon the issue of Judge *Pro Tem* Hammond's disqualification deprived [Petitioner] the opportunity to demonstrate law enforcement's knowledge of the personal and prior relationship between Judge Hammond and Larz Youngren at the time of the application for the search warrant and the scope and the extent of such relationship." (Respondents' Exh. BB at 7) However, this argument challenging the lack of an evidentiary hearing on "due process" grounds, raised for the first time to the Arizona Supreme Court, did not constitute "fair presentation" for exhaustion purposes. The Supreme Court has held that the submission of a claim for the first time to an appellate court on discretionary review does not constitute fair presentation to satisfy the exhaustion requirement. *See Castille v. Peoples*, 489 U.S. 346, 351-52 (1989); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994); *Arizona v. Shattuck*, 140 Ariz. 582, 684 P.2d 154, 156 (Ariz. 1984) (explaining that review by the Arizona Supreme court is discretionary in cases not involving a life sentence or death penalty). Moreover, Petitioner's challenge to the lack of an evidentiary hearing raised in his petition for review to the Arizona Supreme Court was based on a different theory than the claim he presents in Ground 1 of the pending § 2254 petition. The exhaustion doctrine requires state prisoners seeking federal habeas relief to present the same legal theories to both the state and federal courts. *Beaty*, 303 F.3d at 989-90 (stating that a habeas petitioner did not fairly present a Sixth Amendment conflict-of-interest claim to the Arizona courts because he presented the federal court with a different conflict than the conflict-of-interest raised in state court.).

As on direct appeal, Petitioner did not properly present the claim raised in Ground 1 to the state court during his first post-conviction proceeding. In his first Rule-32 petition, Petitioner raised a different hearing-based claim — that he "was denied due process and a fair consideration of all evidence bearing upon the legality of the issuance of Search Warrants by the Hon. Marc Hammond, Judge *Pro Tem* of the Superior Court, by the trial court's refusal to permit Judge Hammond to testify at the Suppression Hearing." (Respondents' Exh. NN at 3, 5-9) Unlike the claim raised in Ground 1, the due process

claim included in Petitioner's first petition for post-conviction relief was not related to the trial court's decision to rule on Petitioner's October 18, 2001 motion *in limine* based on the transcripts of the pretrial interviews of Sergeants Hodap and Kasun. A state prisoner does not exhaust a federal constitutional claim unless he presented the same legal theory to the state and federal courts. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Additionally, in his first petition for post-conviction relief, Petitioner did not cite the Fourteenth Amendment's Due Process Clause or any federal case law, rather he referred to "due process" generally and cited state cases. (Respondents' Exh. NN at 8 )

On appeal of the denial of his first petition for post-conviction relief, Petitioner again did not argue that the trial court denied him due process by failing to hold an evidentiary hearing to take the live testimony of Sergeants Hodap and Kasun. (Respondents' Exh. PP at 3-5)

Finally, although Petitioner's petition for review to the Arizona Supreme Court did advance the claim set forth in Ground 1 of the pending § 2254 petition — that he was "denied due process and a fair consideration of all evidence bearing upon the veracity of Officer Manera's sworn statements regarding [Petititioner] when the trial court failed to allow [Petitioner] to present evidence from Sgt. Hodap and Kasun," – Petitioner's presentation of this claim for the first time to the Arizona Supreme Court on post-conviction review does not satisfy the exhaustion requirement. Review by the Arizona Supreme court is discretionary in cases not involving a life sentence of death penalty. *Shattuck*, 140 Ariz. 582, 684 P.2d at 156. Raising issues for the first time in a petition for discretionary review does not satisfy § 2254's exhaustion requirement. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).

In his second petition for post-conviction relief, Petitioner attempted to raise the same claim he asserts in Ground 1 of the instant § 2254 Petition. (Respondents' Exh. CCC at 2) The trial court found that Petitioner's claim was "precluded pursuant to Rule 32.2(a)." (Respondents' Exh. GG) Under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a defendant is precluded from raising claims that could have been raised on direct appeal or in

any previous collateral proceeding.  *See State v. Curtis,* 185 Ariz. 112, 113, 912 P.2d 1341, 1342 (App. 1995)("Defendants are precluded from seeking post-conviction relief on grounds that were adjudicated, or could have been raised and adjudicated, in a prior appeal or prior petition for post-conviction relief."),*disapproved on other grounds by, Stewart v. Smith*, 202 Ariz. 446, 46 P.3d 1067 (Ariz. 2002).  Rule 32.2(a) constitutes an adequate and independent state-law ground.  *See Smith*, 536 U.S. at 860 (holding that Arizona Rule of Criminal Procedure 32.2(a) is an adequate and independent state procedural bar). The Arizona Court of Appeals and Arizona Supreme Court summarily affirmed the trial court's ruling. (Respondents' Exh. KKK, MMM)   The State court's rejection of Petitioner's claim on the basis of an and adequate and independent procedural ground operates as a procedural bar to review of that claim on federal habeas corpus review.  *Nunnemaker*, 501 U.S. at 802-05.

### 2.  Excusing Procedural Bar to review of Ground 1

Because Petitioner's claim asserted in Ground 1 is procedurally defaulted, federal habeas corpus review is only available if he can establish cause and prejudice or a fundamental miscarriage of justice.  In an attempt to establish cause, Petitioner argues that counsel, Mr. Ray, was ineffective for failing to raise Ground 1 during the first post-conviction proceeding. This argument does not help Petitioner because "[t]here is no constitutional right to an attorney in state post-conviction proceedings."  *Coleman*, 501 U.S. at 752-53.  Accordingly, ineffective assistance of post-conviction counsel does not constitute cause to excuse Petitioner's procedural default of Ground 1.  Likewise, Petitioner has not established that failure to consider Ground 1 will result in a fundamental miscarriage of justice.

### 3. Merits of Ground 1

Finally, even if Ground 1 were properly exhausted, Petitioner's Fourth Amendment claim raised therein is not cognizable on habeas corpus review.

When the state provides an opportunity for full and fair litigation of a fourth amendment claim at trial and on direct review, the federal court will not grant habeas corpus relief on the ground that evidence obtained through an unconstitutional search or seizure was

introduced at his trial. *Stone v. Powell*, 428 U.S. 465, 494,(1976); *Mitchell v. Goldsmith*, 878 F.2d 319, 323 (9th Cir. 1989); *Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986). *Stone* only requires the initial opportunity for a full and fair hearing. *Caldwell*, 781 F.2d at 715. "Such an opportunity for a fair hearing forecloses this court's inquiry, upon habeas corpus petition, into the trial court's subsequent course of action." *Caldwell*, 781 F.2d at 715.

The record reflects that the State provided an opportunity for full and fair litigation of Petitioner's claim that the search of his house violated the Fourth Amendment. In December 2000, defense counsel moved to suppress the evidence found in the search of Petitioner's home. (Respondents' Exh. G) The trial court conducted an extensive suppression hearing. (Respondents' Exh. G) The court took the matter under advisement and allowed additional time for further briefing of the issues. (Respondents' Exh. G at 55-61) On March 26, 2001, the trial judge denied the motion to suppress. (Respondents' Exh. H) Petitioner subsequently filed a second motion to suppress, which the court denied. (Respondents' Exhs. I, M)

Petitioner later filed motions *in limine* again seeking to suppress evidence on Fourth Amendment grounds. (Respondents' Exhs. J, K, L, N, O) On November 1, 2001, the court conducted a hearing on the motions *in limine*, but declined to take live testimony of Petitioner's proffered witnesses, Sergeants Hodap and Kasun, because it had already conducted an evidentiary hearing on the previously filed motion to suppress and because Petitioner had submitted transcripts of counsel's interviews with Hodap and Kasun. (Respondents' Exh. P) In Ground I, Petitioner argues that the trial court improperly denied him an evidentiary hearing at which he would have elicited testimony from Sergeants Kasun and Hodap which allegedly would have demonstrated the falsity of certain statements made by Officer Manera in the search warrant affidavit. Although Sergeants Kasun and Hodap did not testify in court, defense counsel had submitted transcripts of their pretrial interview statements in support of the motion *in limine*. Defense counsel wanted Sergeants Kasun and Hodap to testify at an evidentiary hearing as to the contents of their pretrial interview

statements in order to make a record for appeal. (Respondents' Exh. P at 2-7, 10-11) However, when asked by the trial court, he agreed that the court had in its possession the material — including transcripts of Sergeants Kasun's and Hodap's interview statements — necessary to resolve the motions *in limine*. (*Id*.) Counsel's submission of those interview transcripts to the court constituted a "proffer" to the court regarding what Kasun and Hodap would have testified to at an evidentiary hearing. The Supreme Court has endorsed the procedure that the trial court used in this case to resolve the motion to suppress. In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), the Court stated that:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Franks*, 438 U.S. at 171.

To satisfy the Fourth Amendment, Petitioner was only entitled to the opportunity to litigate his challenge to the search and seizure. The trial court was not required to conduct an evidentiary hearing regarding Officer Manera's alleged false statements in the search-warrant affidavit unless Petitioner carried his preliminary burden of showing that Officer Manera's allegedly false statements were either deliberate or made with reckless disregard for the truth, and that those false statements were material to the probable-cause determination. The Ninth Circuit has summarized the standard articulated in *Franks* as follows:

> A hearing pursuant to *Franks v. Delaware* allows a defendant to challenge the sufficiency of an affidavit supporting a search warrant if he or she makes a 'substantial preliminary showing' both that law enforcement officers made a false statement or omission 'knowingly and intentionally, or with reckless disregard for the truth,' and that the statement or omission was 'necessary to the finding of probable cause.'

*United States v. Martinez-Garcia*, 397 F.3d 1205, 1214 (9th Cir. 2005) (quoting *Franks*, 438 U.S. at 155-56).

Thus, the trial court's decision not to hold an evidentiary hearing, but to consider the motion *in limine* regarding suppression of evidence on the record, was not contrary to federal law and did not deprive Petitioner of his Fourth Amendment or Due Process rights. *See United States v. Napier*, 436 F.3d at 1133, 1139 (9th Cir. 2006) (finding that district court properly refused to hold a *Franks* hearing where defendant failed to meet his preliminary burden of showing of entitlement to evidentiary hearing pursuant to *Franks*, and the court correctly denied motion to suppress). In this case, Petitioner was not denied the opportunity to litigate his Fourth Amendment claim, rather, the trial court determined that Petitioner failed to carry his burden of showing entitlement to an evidentiary hearing under *Franks*. Under *Stone*, it is irrelevant whether the trial court was correct in finding that the *Franks* standard was not met. *See Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994) (stating that "Siripongs' argument goes not to the fullness and fairness of his opportunity to litigate the claim, but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant.) (citing *Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir.1990)).

The trial court gave Petitioner numerous opportunities to litigate his Fourth Amendment challenge to the search warrant. The court conducted an evidentiary hearing on March 20, 2001, then conducted a second hearing on November 1, 2001 during which defense counsel presented the interview transcripts of Kasun and Hodap, finally on the second day of trial the court considered Petitioner's renewed motion to suppress and permitted Petitioner to present additional witnesses on that issue. (Respondents' Exh. G at 2-60; Exh. P at 2-10; Exh. S; docket 1-2 at 106-111)

In view of the foregoing, even if Ground 1 were properly before the Court, it does not constitute a cognizable basis for habeas corpus relief.

### C.  Ground 2A

In Ground 2A, Petitioner argues that trial counsel was ineffective for failing to investigate the affidavit in support of the search warrant and for failing to request a *Franks*

hearing.  Respondents correctly assert that this claim is procedurally defaulted and barred from federal habeas review.

Petitioner attempted to raise this claim in his second petition for post-conviction review, (Respondents' Exh. BBB), but the trial court found it was "precluded pursuant to Rule 32.2(a)."  (Respondents' Exh. GGG)  Under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a defendant is precluded from raising claims that could have been raised on direct appeal or in any previous collateral proceeding.  *See Curtis,* 185 Ariz. at 113, 912 P.2d at 1342 ("Defendants are precluded from seeking post-conviction relief on grounds that were adjudicated, or could have been raised and adjudicated, in a prior appeal or prior petition for post-conviction relief.").  The Arizona Court of Appeals and Arizona Supreme Court summarily affirmed the trial court's ruling.  (Respondents' Exh. KKK, MMM)  Arizona Rule of Criminal Procedure 32.2(a) is an adequate and independent procedural rule.  *See Smith*, 536 U.S. at 860; *Ortiz*, 149 F.3d at 932-32.  The state court's denial of this claim based on an adequate and independent state law ground operates as a procedural bar.  *Nunnemaker*, 501 U.S. at 802-05.

Because Ground 2A is procedurally defaulted, that claim is barred from federal habeas corpus review absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice."  To establish "cause", a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules.  *Murray,* 477 U.S. at 488-492.  The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel.  *Id.*  Prejudice is actual harm that results from the constitutional violation or error.  *Magby v. Wawrzaszek,* 741 F.2d 240, 244 (9th Cir. 1984).  Where petitioner fails to establish cause for his procedural default, the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations.  *Smith v. Murray,* 477 U.S. 527, 533 (1986).

Petitioner offers no argument sufficient to overcome the procedural bar. Petitioner's status as an inmate and lack of legal knowledge do not constitute cause for his failure to present his claims to the Arizona courts. *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (finding that an illiterate *pro se* petitioner's lack of legal assistance did not amount to cause to excuse a procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (finding that petitioner's arguments concerning his mental health and reliance upon jailhouse lawyers did not constitute cause.)

Additionally, Petitioner cannot excuse the procedural default of Ground 2A by blaming post-conviction counsel. Petitioner had no right to counsel on post-conviction review and, therefore, ineffective assistance of post-conviction counsel cannot constitute cause. *See Coleman*, 501 U.S. at 752-53; *Cook*, 538 F.3d at 1027, 1028.

Petitioner has also failed to show that failure to consider the defaulted claim will result in a fundamental miscarriage of justice. A federal court will only review a procedurally defaulted habeas claim on the merits if petitioner demonstrates that failure to consider the merits of the claim will result in a "fundamental miscarriage of justice." A "fundamental miscarriage of justice" occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo,* 513 U.S. 298 (1995). The fundamental miscarriage of justice exception applies to a "narrow class of cases" in which a petitioner makes an extraordinary showing that an innocent person was probably convicted because of a constitutional violation. *Schlup v. Delo,* 513 U.S. 298, 231 (1995). Petitioner has the burden of demonstrating that a "constitutional violation has resulted in the conviction of one who is actually innocent." *Id.* at 327. To establish requisite probability, Petitioner must prove with new reliable evidence that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 324, 327. New evidence presented in support of a fundamental miscarriage of justice claim may include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Id.* at 324, *see also, House v. Bell,*

547 U.S. 518 (2006) (stating that a fundamental miscarriage of justice contention must involve evidence that the trial jury did not have before it).

Petitioner has not offered any new evidence, or asserted that, in light of any newly discovered evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 324, 327.

Because Petitioner has not established any basis to excuse his procedural default, Ground 2A is barred from federal habeas corpus review and the Court need not consider the merits of that claim.

## III. Merits Review of Ground 2B

In Ground 2B, Petitioner asserts that counsel Mr. Ray was ineffective for failing to include certain Fourth Amendment arguments in his first petition for post-conviction relief. (docket # 1 at 7, 14) Respondents argue that Petitioner's remaining claim, Ground 2B, lacks merit. The Court will consider Petitioner's remaining claim after discussing the applicable standard of review.

### A. Standard of Review

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA") which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Under the AEDPA, a federal court may not grant a habeas petition "with respect to any claim that was adjudicated on the merits in state court" unless the state court's decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2); *Carey v. Musladin*, 549 U.S. 70 (2006); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006). To determine whether a state court ruling was "contrary to" or involved an "unreasonable

application" of federal law, courts look exclusively to the holdings of the Supreme Court which existed at the time of the state court's decision. *Mitchell v. Esparza*, 540 U.S. 12, 15-15 (2003); *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Accordingly, the Ninth Circuit has acknowledged that it cannot reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal constitutional issue. *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Even if the state court neither explained its ruling nor cited United States Supreme Court authority, the reviewing federal court must nevertheless examine Supreme Court precedent to determine whether the state court reasonably applied federal law. *Early v. Packer*, 537 U.S. 3, 8 (2003). The United States Supreme Court has expressly held that citation to federal law is not required and that compliance with the habeas statute "does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.*

A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted); *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005). An incorrect application of federal law does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable.") "It is not enough that a federal habeas court, in its independent review of the legal question," is left with the "firm conviction" that the state court ruling was "erroneous." *Id.*; *Andrade*, 538 U.S. at 75. Rather, the petitioner must

establish that the state court decision is "objectively unreasonable." *Middleton v. McNeil*, 541 U.S. 433 (2004); *Andrade*, 538 U.S. at 76.

In conducting an analysis under the AEDPA, the habeas court considers the last reasoned state court decision addressing the claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Additionally, the habeas court presumes that the state court's factual determinations are correct and petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) (stating that "a determination of factual issues made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Williams v. Rhoades*, 354 F.3d 1101, 1106 (9th Cir. 2004).

Where a state court decision is deemed "contrary to" or an "unreasonable application of" clearly established federal law, the reviewing court must next determine whether it resulted in constitutional error. *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th Cir. 2002). On habeas review, the court assesses the prejudicial impact of most constitutional errors by determining whether they "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Fry v. Pliler*, 551 U.S. 112 (2007) (*Brecht* standard applies whether or not the state court recognized the error and reviewed it for harmlessness). The *Brecht* harmless error analysis also applies to habeas review of a sentencing error. The test is whether such error had a "substantial and injurious effect" on the sentence. *Calderon v. Coleman*, 525 U.S. 141, 145-57 (1998) (holding that for habeas relief to be granted based on constitutional error in capital penalty phase, error must have had substantial and injurious effect on the jury's verdict in the penalty phase.); *Hernandez v. LaMarque*, 2006 WL 2411441 (N.D.Cal., Aug. 18, 2006) (finding that even if the evidence of three of petitioner's prior convictions was insufficient, petitioner was not prejudiced by the court's consideration of those convictions because the trial court found four other prior convictions which would have supported petitioner's sentence.) The Court will review Petitioner's claim under the applicable standard of review.

**B.  Ground 2B - Ineffective Assistance of "Appellate" Counsel**

In Ground 2B, Petitioner asserts that Mr. Ray rendered ineffective assistance of "appellate" counsel by not including certain Fourth Amendment arguments in his first petition for post-conviction relief.  (docket # 1 at 7, 14)  Although Petitioner describes Mr. Ray as "appellate" counsel, the body of his argument makes it clear that he is referring to Mr. Ray's assistance on post-conviction review.  Petitioner provides that following "relevant facts" in support of his claim of ineffective assistance:

> On August 18th, 2005, Appellate counsel filed petition for post-conviction relief without consulting with Defendant.

> On November 25th, 2005, Defendant wrote to counsel asking why counsel failed to raise issues that were requested of him.  (Exhibit M to [PCR]).

> On March 5th, 2006, Appellate counsel replied that he would not raise issues requested of him.  (Exh. N. [to PCR]).

> On March 24th, 2006, Defendant once again requested that issues be raised to preserve them for appeal.  (Exh. O [to PCR]).

Counsel for the Defense cut off communication with the Defendant.

(docket # 1 at 7, 14)  Petitioner's claim of ineffective assistance of post-conviction counsel raised in Ground 2B does not entitle him to habeas corpus relief.  Petitioner had no right to counsel on post-conviction review.  The "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction relief [is] not a ground for relief in a proceeding arising under section 2254."  *See* 28 U.S.C. § 2254; *Coleman*, 501 U.S. at 757; *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) ; *Bonin v. Vasquez*, 999 F.2d 425, 429-30 (9th Cir. 1993).

Consequently, even assuming Mr. Ray rendered ineffective assistance during Rule 32 proceedings, such ineffective assistance would not entitle Petitioner to habeas corpus relief.

**IV.  Conclusion**

In accordance with the foregoing, the Petition for Writ of Habeas Corpus should be denied because Petitioner has not presented any claim which entitles him to relief.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (docket # 1) be **DENIED.**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See,* Rule 72, Federal Rules of Civil Procedure.

DATED this 2nd day of November, 2009.


_____
Lawrence O. Anderson
United States Magistrate Judge